UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

STEPHEN TAGHON,

           Plaintiff,           Case No. 1:20-cv-373

v.           Honorable Janet T. Neff

SHERIFF PAUL BAILEY et al.,

           Defendants.
_____/

**OPINION**

This is a civil rights action brought by a county jail pretrial detainee under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

**I.**    **Factual allegations**

Plaintiff is presently detained in the Berrien County Jail awaiting trial on charges of arson, larceny, and retail fraud. See https://www.berriencounty.org/558/Inmate-Search (search Stephen Taghon, visited May 7, 2020). The events about which he complains occurred at that

facility. Plaintiff sues Berrien County Sheriff Paul Bailey, the Berrien County Sheriff's Department, and an unnamed jail officer. All three Defendants are sued in their respective official capacities.

Plaintiff complains that Defendants are subjecting him to overcrowded and unsanitary conditions of confinement that have been made worse by the COVID-19 pandemic. Plaintiff claims that the pandemic has exacerbated the conditions at the jail in two ways: first, because of the risk of infection from the virus; and second, because it raises tension and stress in the overcrowded jail.

Plaintiff reports that he is housed in the IF-Unit. The unit, apparently, consists of five 2-man cells and a day room. Plaintiff claims that, on Sunday, March 15, 2020, the unit housed 17 inmates, with 7 sleeping on the floor of the day room. He claims that the 10-man units at the jail have been filled with anywhere from 2 to 8 additional inmates who are forced to sleep on the dayroom floors of their respective units.

With regard to the risk of COVID-19 infection, Plaintiff alleges that jail employees did not start wearing masks until April 5, 2020. He suggests that the jail is not enforcing social distancing requirements and is not supplying sanitation supplies. Plaintiff does not allege that he, or any other inmate in his overcrowded unit, has been infected with the virus.

Based on Plaintiff's allegations, it appears the heightened tensions caused by the virus have been more problematic. Plaintiff indicates those tensions have led to a mob or gang mentality. That mentality, in turn, has created a risk of serious harm. Plaintiff identifies multiple occasions where the risk of harm has been realized.

Plaintiff states that on March 15, 2020, he was attacked in his cell, physically assaulted, and severely choked and strangled. Plaintiff claims he suffered a concussion as a result.

Plaintiff pressed the "Push to Talk Device" (PTTD) to report the assault. Defendant Unknown Deputy responded, "Aww, are they picking on you?" (Compl., ECF No. 1, PageID.5.) Plaintiff contends that the deputy's tone was laughing and sarcastic and the deputy ignored Plaintiff's complaints. (*Id*.)

On Tuesday, March 24, Plaintiff reports that the pandemic stress reached a head resulting in a series of violent attacks against him and inmates Michael Exom and Bryan Kelley. Plaintiff suffered a lost filling in his molar as a result of the attack. Plaintiff notes that jail deputies responded to the attacks and that the attackers are being criminally prosecuted. (Compl., ECF No. 1, PageID.5.)

Plaintiff has sought and been denied treatment for the lost filling. Plaintiff claims he needs a root canal and crown and that he remains in serious pain from the exposed nerve such that he can no longer chew food on the left side of his mouth.

Plaintiff indicates that he tried to inform the Sheriff and the Sheriff's Department about these problems in writing. He attaches to his complaint a handwritten grievance addressed to Sheriff Bailey or Jail Administrator. He does not allege that Sheriff Bailey received the grievance; nonetheless, he contends Sheriff Bailey is responsible because he "is in charge of" the Sheriff's Department. (Compl., ECF No. 1, PageID.6.)

Plaintiff seeks compensatory and punitive damages and injunctive relief ordering Defendant Berrien County Sheriff's Department to provide "advanced orthodontic dental care repair of molar tooth filling loss with root canal and crown procedure." (Compl., ECF No. 1, PageID.4.)

**II.     Failure to state a claim**

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*

3

*v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

4

**III.     Claims relating to Michael Exom and Bryan Kelley**

Plaintiff purports to bring this action on behalf of himself and other individuals who have not signed the complaint. (Compl., ECF No. 1, PageID.6) ("Plaintiff(s) is a pretrial detainee representing similarly situated detainees . . . ."). In general, a party may plead and conduct his or her case in person or through a licensed attorney; he may not act in a representative capacity on behalf of others. 28 U.S.C. § 1654; *Garrison v. Mich. Dep't of Corr.*, 333 F. App'x 914, 919 (6th Cir. 2009). Only a licensed attorney may represent other persons. *See Rowland v. Calif. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201-03 (1993); *United States v. 9.19 Acres of Land*, 416 F.2d 1244, 1245 (6th Cir. 1969). In addition, an adult litigant who wishes to proceed *pro se* must personally sign the complaint. *See Steelman v. Thomas*, No. 87-6260, 1988 WL 54071, at *1 (6th Cir. May 26, 1988); *see also* Fed. R. Civ. P. 11(a) (stating that "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record . . . or by a party personally if the party is unrepresented").

Only Plaintiff Taghon signed the complaint. He does not allege that he is an attorney. Consequently, his signature is not effective to bring claims on behalf of other individuals identified as plaintiffs. Thus, the Court does not recognize the other individuals as plaintiffs in this action.

Furthermore, Plaintiff does not have standing to assert the rights of these other individuals. *See Newsom v Norris*, 888 F.2d 371, 381 (6th Cir. 1989); *Raines v. Goedde*, No. 92-3120, 1992 WL 188120, at *2 (6th Cir. Aug. 6, 1992). As a layman, Plaintiff may only represent himself with respect to his own claims. He cannot bring claims asserting the constitutional rights of other people. Thus, to the extent Plaintiff's claims are based on the rights of his Michael Exom and Bryan Kelley, he does not state a viable claim.

**IV.     Sheriff's Department as a Defendant**

Plaintiff sues the Berrien County Sheriff's Department. The sheriff's department does not exist as a separate legal entity; it is simply an agent of the county. *Vine v. Cty. of Ingham*, 884 F. Supp. 1153, 1158 (W.D. Mich. 1995) (citing *Hughson v. Cty. of Antrim*, 707 F. Supp. 304, 306 (W.D. Mich. 1988) and *Bayer v. Almstadt*, 185 N.W.2d 40, 44 (Mich. Ct. App. 1970)). Accordingly, the Court will dismiss the Berrien County Sheriff's Department. However, construing Plaintiff's *pro se* complaint with all required liberality, *Haines*, 404 U.S. at 520, the Court assumes that Plaintiff intended to sue Berrien County. The Court will direct the Clerk to substitute Berrien County as a party defendant in this action.

**V.     Individual defendants in their respective official capacities**

Plaintiff sues Defendants Unknown Deputy and Sheriff Bailey in only their respective official capacities. (Compl., ECF No. 1, PageID.2.) The courts have recognized that, where an entity is named as a defendant, official-capacity claims against employees of the entity are redundant. *See Foster v. Michigan*, 573 F. App'x 377, 390 (6th Cir. 2014) (finding official-capacity suits against defendant agency's employees superfluous where the state and agency were also named as defendants); *see also Faith Baptist Church v. Waterford Twp.*, 522 F. App'x 332, 327 (6th Cir. 2013) ("Having sued Waterford Township, the entity for which Bedell was an agent, the suit against Bedell in his official capacity was superfluous.") (citing *Foster*); *Petty v. Cty. of Franklin*, 478 F.3d 341, 349 (6th Cir. 2007) ("To the extent that Petty's suit is against [Sheriff] Karnes in his *official* capacity, it is nothing more than a suit against Franklin County itself."), *abrogated on other grounds by Twombly,* 550 U.S. at 561-62, and *Iqbal*, 556 U.S. at 679. Because Berrien County will now be included as a named Defendant, Plaintiff's official-capacity claims against Defendants Bailey and Unknown Deputy, because each constitutes an identical suit against Berrien County. *Foster*, 573 F. App'x at 390 (citing *Graham*, 473 U.S. at 165). The Court

therefore will dismiss Plaintiff's claims against Defendants Unknown Deputy and Sheriff Bailey, as redundant.

## VI.     Municipal liability

A local government such as a municipality or county "cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 691 (1978). Instead, a municipality may only be liable under § 1983 when its policy or custom causes the injury, regardless of the form of relief sought by the plaintiff. *Los Angeles Cty. v. Humphries*, 562 U.S. 29, 35-37 (2010) (citing *Monell*, 436 U.S. at 694 (1974)). In a municipal liability claim, the finding of a policy or custom is the initial determination to be made. *Doe v. Claiborne Cty.*, 103 F.3d 495, 509 (6th Cir. 1996). The policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving,* 330 F.3d 802, 815 (6th Cir. 2003); *Doe*, 103 F.3d at 508-509. It is the court's task to identify the officials or governmental bodies which speak with final policymaking authority for the local government in a particular area or on a particular issue. *McMillian v. Monroe Cty.*, 520 U.S. 781, 784-85 (1997).

In matters pertaining to the conditions of the jail and to the operation of the deputies, the sheriff is the policymaker for the county. Mich. Comp. Laws § 51.75 (sheriff has the "charge and custody" of the jails in his county); Mich. Comp. Laws § 51.281 (sheriff prescribes rules and regulations for conduct of prisoners); Mich. Comp. Laws § 51.70 (sheriff may appoint deputies and revoke appointments at any time); *Kroes v. Smith*, 540 F. Supp. 1295, 1298 (E.D. Mich. 1982) (the sheriff of "a given county is the only official with direct control over the duties,

7

responsibilities, and methods of operation of deputy sheriffs" and thus, the sheriff "establishes the policies and customs described in *Monell*"). Thus, the court looks to the allegations in Plaintiff's complaint to determine whether Plaintiff has alleged that the sheriff has established a policy or custom which caused Plaintiff to be deprived of a constitutional right.

Plaintiff's action fails at this first step because his allegations have not identified a policy or custom. A "policy" includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the sheriff. *Monell*, 436 U.S. at 690. The Sixth Circuit has explained that a "custom"

> . . . for the purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the force of law. In turn, the notion of "law" includes deeply embedded traditional ways of carrying out state policy. It must reflect a course of action deliberately chosen from among various alternatives. In short, a "custom" is a "legal institution" not memorialized by written law.

*Claiborne Cty.*, 103 F.3d at 507 (citations and quotations omitted).

Plaintiff has not asserted that there is an official policy that prompted the failure to respond to heightened tensions caused by the COVID-19 virus, the increased risk of harm that resulted, or the failure to treat Plaintiff's dental injury. Moreover, the COVID-19 infection risk, which Plaintiff claims lies at the heart of the constitutional violations he alleges, is so recent, the response of the county or the jail to that risk cannot be described as "custom"—at least not based on Plaintiff's allegations. Indeed, based on Plaintiff's allegations, it appears his constitutional violation flowed from the failure to change the jail's custom in response to changed circumstances. There is nothing in the complaint, however, that suggests that the failure to change custom in response to changed circumstances is, itself, customary.

Similarly, the response of Defendant Unknown Deputy to Plaintiff's complaint on March 15 stands in isolation and Plaintiff's allegations do not permit the inference that the response

was customary. The same is true with regard to the jail personnel's response to the risk of violence, and then violence, on March 24. Finally, Plaintiff offers no facts to support an inference that the failure to treat his dental injury is the result of some unwritten, embedded tradition.

Because Plaintiff has not identified a policy or custom, or alleged facts from which such a policy or custom might be inferred, he has failed to state a municipal liability against Berrien County. Accordingly, Plaintiff's claim against Berrien County are properly dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). The Court does not certify that an appeal would not be in good faith.

Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:   May 11, 2020                              /s/ Janet T. Neff
                                                                   Janet T. Neff
                                                                   United States District Judge